**E-FILED on** 10/24/06

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| GINA FISCHER,<br><br>  Plaintiff,<br><br>  v.<br><br>THE ANDERSON BEHEL STEVEN CREEK PORCHE AUDI EMPLOYEE BENEFIT PLAN,<br><br>  Defendant.<br><br>BLUE SHIELD OF CALIFORNIA,<br><br>  Real Party in Interest. | No. C-05-03790 RMW<br><br>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT<br><br>**[Re Docket Nos. 24, 29, 33, 37, 38, 40, 43, 44]** |

Real party in interest California Physicians' Service d/b/a Blue Shield of California ("Blue Shield") moves for summary judgment affirming its decision on payment of plaintiff Gina Fisher's medical bills, or, alternatively, that its decision will be reviewed for abuse of discretion and that the court will consider nothing beyond the administrative record. Fisher moves for summary adjudication on several points, including that Blue Shield must cover her medical bills at non-preferred provider rates. For the reasons set forth below, the court grants each motion in part and denies each motion in part.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT—No. C-05-03790 RMW
JAH

# I. BACKGROUND

In January 2002, gynecologist Deborah Metzger performed two laparoscopic surgeries a week apart on Fisher to treat, *inter alia*, endometriosis.[1] Metzger's notes following the first procedure stated:

> **PREOPERATIVE DIAGNOSIS:** Chronic pelvic pain; endometriosis; bilateral groin pain; dysfunctional uterine bleeding; pudendal neuralgia.
>
> **POSTOPERATIVE DIAGNOSIS:** Stage IV endometriosis; obliterated cul-de-sac; bilateral ovarian endometriomas; left direct femoral hernias; right indirect, femoral, and obturator hernias; pudendal neuralgia; dysfunctional uterine bleeding.

BSC 60.[2] A later note stated:

> Following [Fisher's] postoperative recovery she is stable. Due to the extensive nature of her surgery, she is at risk of adhesion reformation, and she does have a history of severe chronic pelvic pain. She has elected to return to surgery for a second laparoscopy to rule out adhesions, infection, bleeding, or any other complication of surgery.

BSC 15.

Fisher's medical insurance is administered by Blue Shield. Under the insurance plan, Fisher generally pays only 10 percent of the costs of services rendered by in-plan doctors or in-plan facilities, but 30 percent of out-of-plan costs up to certain maximums, beyond which she pays 100 percent. BSC 413-18. The precise plan language Blue Shield alleges applies to Metzger's surgeries is "Services rendered by a Non-Participating Physician are paid at 70% of the Allowable Amount. Subscribers are responsible for the remaining 30% of the Allowable Amount, as well as any charges above the Allowable Amount."[3] BSC 413. Under the plan, "Allowable Amount" is defined as

> 1. the amount Blue Shield of California has determined is an appropriate payment for the Services(s) rendered in the provider's geographic area, based upon such

---

[1] Endometriosis is an often painful condition characterized by the occurrence of functional endometrial tissue (which normally occurs only inside the uterus) outside the uterus.

[2] The court adopts the parties' use of "BSC [page]" to refer to the Bates-numbered pages of the administrative record, submitted as Exhibit A to the Crawford Declaration, docket no. 25.

[3] It should not be forgotten when searching through the administrative record that Blue Shield does not pay the "Allowable Amount" (which appears to correspond to the "AMOUNT ALLOWED" on the forms Blue Shield sent Fisher). Blue Shield pays only 70 percent of the Allowable Amount, less the amount of any applicable co-payment.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT—No. C-05-03790 RMW
JAH                                                                                      2

> factors as Blue Shield's evaluation of the value of the Service(s) relative to the value of other Services, market considerations, and provider charge patterns; or
>
> 2. such other amounts as the provider and Blue Shield of California have agreed will be accepted as payment for the Service(s) rendered; or
>
> 3. if an amount is not determined as described in either (1.) or (2.) above, the amount Blue Shield of California determines is appropriate considering the particular circumstances and the Services rendered.

BSC 398. The plan does not cover services that are not "medically necessary." BSC 446-47.

It is not disputed that Fisher's 2002 surgeries were rendered by out-of-plan providers. Blue Shield paid substantially less than it was billed for Fisher's surgeries. The parties have not presented a useful summary of the difference between the amounts paid and billed. However, of a $24,300 bill, Blue Shield paid $132.89, BSC 52-53; of a $5,750 bill, Blue Shield paid $772.72, BSC 517. Fisher challenged Blue Shield's decision not to pay large amounts of her medical bills. *See, e.g.*, BSC 9. Blue Shield ultimately determined that Metzger did not have sufficient evidence to diagnose Fisher with herniae, and that the second surgery was not medically necessary. BSC 1. Fisher filed suit, seeking $40,000 in damages, plus attorneys' fees. Compl. at 2-3.

## II. ANALYSIS

**A. Summary judgment**

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* A party moving for summary judgment who does not have the ultimate burden of persuasion at trial has the initial burden of producing evidence negating an essential element of the non-moving party's claims or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). A court may grant a motion for summary judgment in part and narrow the issues remaining for trial. *See* Fed.R.Civ.P. 56(d).

**B.  Standard of review**

"[A] denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  When the plan confers discretion on the plan administrator to determine eligibility for benefits, courts generally review the denial of benefits for abuse of discretion.  *See id.*  A conflict of interest on the part of the plan administrator can convert review for abuse of discretion into *de novo* review.  *Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech., Inc*., 125 F.3d 794, 797 (9th Cir. 1997).

Here, Fisher concedes that the plan at issue gives Blue Shield discretion.[4]  Pl.'s Mot. at 6.  However, Fisher argues that Blue Shield operated under a conflict of interest sufficient to convert the standard of review to *de novo*.  Fisher claims that the following facts show that Blue Shield was operating under a conflict of interest: (1) Blue Shield gave "preauthorization" for the procedures, *see* BSC 21, which conflicts with its decision that they were not medically necessary; (2) Blue Shield has not produced its medical policy, *see* BSC 407, which it appears to use to determine medical necessity under the plan; (3) no medical literature indicates "second-look" laparoscopy is medically unnecessary; and (4) the administrative record is disorganized.  None of these facts provides a persuasive basis for finding that Blue Shield had a conflict of interest.  The first three are in essence arguments that Blue Shield abused its discretion; the last—which is discussed below—is not relevant to the issues before the court except to the extent the record is incomplete.

Fisher has not demonstrated a conflict of interest.  Therefore, Blue Shield's decision is reviewed under the abuse-of-discretion standard.

**C.  Consideration of evidence beyond the administrative record**

Fisher wishes the court to consider two documents outside the administrative record: (1) selected pages of *Chronic Pelvic Pain: An Integrated Approach*, of which Metzger is one

---

[4]  The plan provides that Blue Shield "shall have the power and discretionary authority to construe and interpret the provisions of this plan, to determine the benefits of this plan, and determine eligibility to receive benefits under the plan."  BSC 457.

1  author, and (2) a letter dated June 9, 2006 from Cindy Casamina, which states that Menlo Park
2  Surgical Hospital had a contract in effect with Blue Shield for all of 2002.  Blue Shield objects to
3  consideration of either document.  Blue Shield has, itself, offered the declaration of Leslie
4  Crawford to rebut assertions in Casamina's letter.

5  The Ninth Circuit "has clearly established that the abuse of discretion standard permits the
6  district court to review only the evidence presented to the plan trustees."  *Banuelos v. Constr.*
7  *Laborers' Trust Funds for S. Cal.*, 382 F.3d 897, 904 (9th Cir. 2004) (quotation marks and brackets
8  omitted).  Contrary to Fisher's argument, *see* Pl.'s Mot. at 3 n.4, additional evidence may only be
9  considered in an ERISA case if the *de novo* standard of review applies.  *See Banuelos*, 382 F.3d at
10  904; *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 943-44 (9th
11  Cir. 1995).  The court will therefore not consider Fisher's additional evidence[5] or the Crawford
12  declaration.

13  **D.  Whether Blue Shield abused its discretion**

14  "ERISA plan administrators abuse their discretion if they render decisions without any
15  explanation."  *Taft v. Equitable Life Assur. Soc'y*, 9 F.3d 1469, 1472 (9th Cir. 1993) (quotation
16  marks omitted).  Blue Shield argues that its determination must be upheld under abuse-of-
17  discretion review.  Fisher counters that there is insufficient evidence in the record to determine
18  whether Blue Shield's decision was within its discretion to make, and she requests the court
19  remand the matter for articulation of the standards used to calculate how much of her medical bills
20  Blue Shield is obligated to pay.

21  Because the court tentatively agreed with Fisher that the evidence in the administrative
22  record was insufficient to satisfy *Taft*, at the hearing on these motions the court instructed Blue
23  Shield to submit a table with columns showing with respect to each of Fisher's bills submitted to
24  Blue Shield (1) the date of the bill, (2) the provider, (3) the amount of the bill, (4) the amount paid,
25  and (5) the reason for payment of less than the full amount and, if there is more than one reason,

---

[5] Fisher's passing assertion that the magistrate judge incorrectly denied discovery into "preauthorization," the qualifications of Blue Cross's medical reviewers, and Blue Cross's medical policy, *see* Pl.'s Mot. at 5 n.5, is hardly sufficient to constitute an appeal of that order, and, even if it was, would have been deemed denied under Civil L.R. 72-2 as of June 24, 2006.

the amount attributable to each reason. Blue Shield has purported to do this. *See* Table (docket no. 47).

### 1. Physician services

Blue Shield explained in its supplemental table some of the procedure codes (such as that "5855859" means "laparoscopy—hysteroscopy, surgical with biopsy") that are not readily, and perhaps not at all, decipherable from the administrative record alone. According to Blue Shield, the administrative record (assuming one understands the procedure codes) shows that Blue Shield paid Metzger[6] $905.61 of $9,400 she billed for the first laparoscopic endometriosis surgery and $700.84 of $3,800 for the second. Table at 3-4. Blue Shield also claims the administrative record indicates that Blue Shield paid nothing for the hernia repair and pudendal nerve block, and also paid nothing "[f]or codes related to procedures that were billed separately, but were encompassed by other procedures performed the same day," *i.e.*, "laparoscopy related to digestive system - surgeon," "laparoscopy related to digestive system - assistant surgeon," "repair of urinary system—ureterolysis - surgeon," and "repair of urinary system—ureterolysis - assistant surgeon," *Id.* at 3-5. The court has no reason to doubt Blue Shield's representations.

That some of the procedures Metzger billed overlap sufficiently to justify not paying for all of them is supported by nothing more than the fact that they all seem to be abdominal laparoscopic procedures and a footnote on Blue Shield forms that reads "THIS PAYMENT HAS BEEN REDUCED BECAUSE MULTIPLE RELATED SERVICES WERE PROVIDED ON THE SAME DAY." BSC 53, 64. Likewise, the administrative record indicates that Blue Shield paid nothing for the procedure codes relating to pudendal nerve block, 644305950 and 644305980, claiming they were not medically necessary. BSC 52-53. However, nothing in the administrative record indicates why Blue Shield found the procedures unnecessary (though Blue Shield now claims it was in part because the Fisher was under general anesthesia during the procedure, making a nerve block unnecessary, *see* Table at 4-5).

However, even accepting, *arguendo*, that Blue Shield did not abuse its discretion by finding that some of Metzger's procedures were not medically necessary and that Metzger did not

---

[6] Or, technically, Deborah A. Metzger, Ph.D M.D. Inc.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT—No. C-05-03790 RMW
JAH                                                            6

have sufficient evidence to diagnose Fisher with herniae, there is still insufficient explanation in the administrative record of how Blue Shield arrived at its "Allowable Amounts" to satisfy *Taft*. The plan has a three-pronged definition of "Allowable Amount," which means that Blue Shield will base the "Allowable Amount" on (1) the standard amount paid in the geographic area, (2) Blue Shield's contract with the provider, or (3) whatever Blue Shield deems appropriate. *See* BSC 398. As Fisher's procedures were admittedly performed out-of-plan, Blue Shield would not have used the second prong. However, the court cannot determine whether Blue Shield abused its discretion without knowing if it selected an "Allowable Amount" for each procedure using the first or third prong.

As the record before the court is insufficient to sustain the conclusion that Blue Shield acted within the discretion allowed it in denying payment for certain of Fisher's medical bills and paying only portions of others,[7] the court will grant Fisher's request to remand this matter to the plan administrator with instructions to augment the administrative record and explain how the amounts paid and not paid were determined. *See Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 460-61 (9th Cir. 1996).

**2. Hospital stays**

Blue Shield's supplemental discussion of hospital expenses indicates that Blue Shield itself may have trouble making sense of the administrative record. For example, Blue Shield claims that BSC 79 explains why it paid only $249.20 of $32,650 billed by Menlo Park Surgical Hospital. Table at 7. Blue Shield also claims that BSC 335 explains why Blue Shield paid only $249.20 of $32,650 billed by Recovery Inn of Menlo Park for supplies provided on January 15, 2002. Table at 8.

It does not appear that Blue Shield's explanation can be completely correct. First, the court notes that BSC 79 appears to be identical to BSC 335, from the identifying number (296026569)

---

[7] Fisher's argument that Blue Shield "preapproved" Metzger's procedures is not supported by the existing evidence. As Blue Shield points out, Fisher's evidence for preapproval is solely a letter she sent to Blue Shield stating that Blue Shield had "preapproved" the procedures. *See* BSC 21. Whether Blue Shield "preapproved" Fisher's surgery or surgeries is not susceptible to determination on the summary judgment motions under consideration, though Blue Shield is free to renew its motion on this point in light of the declaration of Leslie Crawford submitted to the court after the hearing.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT—No. C-05-03790 RMW
JAH                                       7

1 down to the way the printing on the left margin is clipped.  Second, BSC 79 refers to Recovery Inn
2 of Menlo Park, so it does not clearly (if at all) justify the amounts of any payments to Menlo Park
3 Surgical Hospital.  Third, operating from an identical sheet of paper in two different places in the
4 administrative record, Blue Shield's calculations are not completely consistent:  It claims the
5 amount disallowed shown by BSC 79 is $32,294, while BSC 335 shows $32,050.[8]  Table at 7-8.

6      Looking past the above concerns, the court notes that the plan contains the following
7 limitations:

8      a.  For covered Services not available in a Preferred Hospital, subject to Blue
Shield's Pre-admission Review and other applicable requirements, benefits are paid
9      at 90% of Billed Charges.  Subscribers are responsible for the remaining 10% of
Billed Charges.
10
     b.  For other non-Emergency Inpatient and Outpatient Services, benefits are paid at
11      70% of allowed charges of no more than $600 per Person per day.  Subscribers are
responsible for the remaining 30% of the $600, as well as all charges in excess of
12      $600.

13 BSC 414-15.  The court would need to determine whether the language quoted above regarding
14 "Services" limits the amount Blue Shield must pay Recovery Inn of Menlo Park for "SUPPLIES."[9]
15 However, since Blue Shield's elucidation of the administrative record is clearly incorrect, the court
16 is unable to determine at this time whether Blue Shield abused its discretion in paying what it did
17 (or even the exact amount paid) for Fisher's hospitalization.

18 **E.  Organization of administrative record**

19      Fisher asks the court to require the plan administrator to provide a better-organized
20 administrative record for this court's review.  It appears that someone merely copied all the
21 documents contained in Blue Shield's file on Fisher in the order they happened to be in that file,
22 and then filed and served this unorganized stack.[10]

23

---

24 [8] This discrepancy appears to stem from a simple error.  The figures differ by $244, the amount
listed as Fisher's deductible for the charges.  However, the discrepancy still (in the light most
25 favorable to Blue Shield) highlights the fact that even Blue Shield appears to have some trouble
deciphering the administrative record.
26
[9] The parties have not briefed this issue.
27
[10] Several documents appear in multiple copies in the record.  *See, e.g.*, BSC 60, 361, 527.  Some
28 documents are appear to have been copied and faxed multiple times and border on illegible.  *See,
e.g.*, BSC 324.  Others were nearly illegible from the outset.  *See, e.g.*, BSC 8.  Some pages are

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT—No. C-05-03790 RMW
JAH        8

1    However, Fisher cites no authority requiring a well-organized administrative record. There
2 is no evidence that the order of the administrative record is not the order of Blue Shield's file as
3 "kept in the usual course of business." *See* Fed.R.Civ.P. 34(b) para. 3. The court would certainly
4 not object to the parties stipulating to the admission of an organized, legible excerpt of the
5 administrative record with duplicate documents removed, but the court will not at this time order
6 Blue Shield to produce one.

**F. Attorneys' fees**

Fisher requests an award of fees to date. An award of fees is not justified at this time.

### III. ORDER

For the foregoing reasons, the court:

1. determines the standard of review is for abuse of discretion;
2. remands this matter to the plan administrator with instructions to explain how the amounts paid or not paid were determined; and
3. otherwise denies both parties' motions for summary judgment, though without prejudice to filing, after the administrative record is augmented, new motions for summary judgment on issues left open by this order.

Furthermore, the parties shall each sixty days file a short, non-argumentative joint report on their progress during remand to the plan administrator and shall inform the court immediately if they settle this matter.

DATED:    10/23/06

RONALD M. WHYTE
United States District Judge

---

mostly blank and contain no useful information. *See, e.g.*, BSC 81. Some pages (at least in the copy of the administrative record filed with the court) are upside-down. *See, e.g.*, BSC 599-605.

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs:**

Laurence F. Padway          lp@padway.com

**Counsel for Defendants:**

John M. LeBlanc             jleblanc@barwol.com
Jordan S. Altura            jaltura@gordonrees.com
Jordan S LeBlanc
Ned A. Fine                 nfine@employerlawyers.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**      10/24/06                            /s/ JH
                                          **Chambers of Judge Whyte**