**E-FILED on** 10/6/2008

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GINA FISCHER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>THE ANDERSON BEHEL STEVEN CREEK PORCHE AUDI EMPLOYEE BENEFIT PLAN,<br><br>　　　　Defendant.<br><br>BLUE SHIELD OF CALIFORNIA,<br><br>　　　　Real Party in Interest. | No. C-05-03790 RMW<br><br>ORDER RE: RENEWED MOTIONS FOR SUMMARY JUDGMENT<br><br>**[Re Docket No. 59]** |

The court has pending before it the parties' renewed cross-motions for summary judgment. The court has reconsidered the applicable standard of review in light of *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006) and *Metropolitan Life Ins. Co. v. Glenn*, __ U.S. __, 128 S.Ct. 2343 (2008) recently decided by the Supreme Court. It thereafter reviewed the determinations made

by Blue Shield of California on Gina Fisher's claims under the medical plan she had through her employment. The court finds that Blue Shield did not abuse its discretion in its claim determinations with the exception that it did not adequately explain its denials in certain limited areas. The matter is remanded to Blue Shield to make further payment in accordance with this order.

## I. BACKGROUND[1]

In January 2002, gynecologist Deborah Metzger, M.D. performed two laparoscopic surgeries a week apart on Fisher to treat, *inter alia*, endometriosis. The first surgery was performed on January 15, 2002; the second surgery was performed on January 22, 2002. Dr. Metzger's notes following the first procedure stated:

> **PREOPERATIVE DIAGNOSIS:** Chronic pelvic pain; endometriosis; bilateral groin pain; dysfunctional uterine bleeding; pudendal neuralgia.
>
> **POSTOPERATIVE DIAGNOSIS:** Stage IV endometriosis; obliterated cul-de-sac; bilateral ovarian endometriomas; left direct femoral hernias; right indirect, femoral, and obturator hernias; pudendal neuralgia; dysfunctional uterine bleeding.

BSC 60. A later note stated:

> Following [Fisher's] postoperative recovery she is stable. Due to the extensive nature of her surgery, she is at risk of adhesion reformation, and she does have a history of severe chronic pelvic pain. She has elected to return to surgery for a second laparoscopy to rule out adhesions, infection, bleeding, or any other complication of surgery.

BSC 15.

Fisher's medical insurance is administered by Blue Shield. Dr. Metzger was a non-participating physician. The plan language governing coverage provides: "Services rendered by a Non-Participating Physician are paid at 70% of the Allowable Amount. Subscribers are responsible for the remaining 30% of the Allowable Amount, as well as any charges above the Allowable Amount." BSC 413. Under the plan, "Allowable Amount" is defined as

> 1. the amount Blue Shield of California has determined is an appropriate payment for the Services(s) rendered in the provider's geographic area, based upon such factors as Blue Shield's evaluation of the value of the Service(s) relative to the value of other Services, market considerations, and provider charge patterns; or
>
> 2. such other amounts as the provider and Blue Shield of California have agreed will be accepted as payment for the Service(s) rendered; or

---

[1] The background facts are largely taken from the court's previous order on the parties' cross-motions for summary judgment.

ORDER RE: RENEWED MOTIONS FOR SUMMARY JUDGMENT—No. C-05-03790 RMW
MAG                                     2

3. if an amount is not determined as described in either (1.) or (2.) above, the amount Blue Shield of California determines is appropriate considering the particular circumstances and the Services rendered.

BSC 398. The plan does not cover services that are not "medically necessary." BSC 446-47.

Fisher challenges Blue Shield's decision not to pay a large portion of her medical bills.

## II. ANALYSIS

### A.  Standard of Review

Plaintiff asserts that the standard of review in this case should be *de novo.* The court, however, finds that the appropriate standard of review is an abuse of discretion that takes into account that Blue Shield both evaluates and pays claims. *See Metropolitan Life Ins. Co.*, 128 S.Ct. at 2344-5. In *Metropolitan Life*, the Supreme Court held that a conflict of interest does not require a change in the standard of review. *Id.* at 2350 ("We do not believe that *Firestone's* statement implies a change in the standard of review, say, from deferential to de novo review."). Rather, "when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one." *Id.* at 2351. Earlier in *Abatie*, the Ninth Circuit similarly determined that abuse of discretion review applies to a discretion-granting plan even if the administrator has a conflict of interest, but that if there is a conflict of interest (such as structural conflict where the insurer acts as both the administrator and the funding source) the conflict must be factored into the abuse of discretion review on a case-by-case basis. *Abatie*, 458 F.3d at 965, 969.

"An ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." *Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005). The court must determine whether, on the evidence considered, the administrator's determination was "reasonable." *Horan v. Kaiser Steel Retirement Plan*, 947 F.2d 1412, 1417 (9th Cir. 1991).

/ / /

/ / /

/ / /

### B.    Coverage Determinations

#### 1. Allowable Amounts

Blue Shield "determines the amount of benefits payable for medical services by first determining the 'Allowable Amount,' which is a standardized value assigned to each item of medical care received by the plan member." Blue Shield Mot. at 8 (citing BSC 398). The plan has a three-pronged definition of "Allowable Amount," which means that Blue Shield will base the "Allowable Amount" on (1) the standard amount paid in the geographic area, (2) Blue Shield's contract with the provider, or (3) whatever Blue Shield deems appropriate. *See* BSC 398. As Fisher's procedures were admittedly performed out-of-plan, Blue Shield would not have used the second prong. The court must thus determine whether Blue Shield abused its discretion in selecting the "Allowable Amount" for each procedure using the first or third prong.

To determine the "standard amount paid in the geographic area," Blue Shield relies upon what is called the "Resource Based Value Scale" ("RBRVS"). In its original briefing on its cross motion for summary judgment, Blue Shield represented that "[f]or each item of care billed by Fisher's health care providers, Blue Shield utilized the RBRVS payment scale to set the 'Allowable Amount.'" Blue Shield Mot. at 9. The court could not determine based on the information submitted in conjunction with the original briefing what the RBRVS values were, what they were based upon and whether they were appropriately applied in Fisher's case.

In its supplemental briefing, Blue Shield now asserts that only five of Fisher's claims implicate RBRVS: the payments for procedure codes 58558-59 (hysteroscopy by primary surgeon), 58662 (laparoscopy to excise lesions by primary surgeon), 58662-80 (laparascopy to excise lesions by assistant surgeon), 00840-P2 on 1/15/02 and 1/22/02 (anesthesia for surgery).[2]

Blue Shield's supplemental briefing explains the formula used in the RBRVS. It explains how the payment formula used by Blue Shield is derived from the Medicare physician fee schedule established by the government and how the RBRVS utilizes a "geographic practice cost index" ("GPCI") that has been established for every Medicare payment locality. The supplemental briefing

---

[2] These five claims are the only procedure codes for which Blue Shield claims to have correctly paid under the plan. The other procedure codes, which presumably also apply RBRVS, are not discussed because Blue Shield claims to have paid for the procedures in error.

ORDER RE: RENEWED MOTIONS FOR SUMMARY JUDGMENT—No. C-05-03790 RMW
MAG                                                    4

1 then sets out the payment formula. *See also* Blue Shield's Supp. Resp. at 5; Ex. C. It then discloses the values used for the procedure codes claimed by Fisher. *Id.*, Ex. D. Based on the explanation of the origin of the values and the formula, the court is satisfied that Blue Shield has calculated the appropriate Allowable Amount for procedure codes 58558-59 and 58662, the procedures performed by the primary surgeon.

With respect to procedure codes performed by the assistant surgeon, for example 58662-80, Blue Shield pays assistant surgeon codes at 20% the rate of the primary surgeon. This practice is supported by Blue Shield's written policies. *See id.*, Exs. F & F. Medicare currently pays 16% of the approved amount for assistant surgeons. *See id.*, Ex. I. With regard to the anesthesia codes, 00840-P2, Blue Shield explains its formula for determining Allowable Amounts for anesthesia. Blue Shield's Supp. Resp. at 9. The conversion rate it uses in California is apparently 2 to 3 times higher than the conversion rate set by Medicare.

Fisher's does not dispute that Blue Shield has appropriately utilized the RBRVS value or applied the terms of the plan when calculating the discounts to the Allowable Amount specified in the plan. Instead, Fisher's contention is that Blue Shield fails to meet its contractual obligation to appropriately determine the Allowable Amount in the first place because it uses in its payment formula the RBRVS, which in turn is based upon government-mandated rates for Medicare. Fisher contends that these rates do not appropriately represent the value of services in the geographic area. She argues instead that the appropriate value of the medical services in her geographic area is the amount Blue Shield pays to its in-network providers. *See* Fisher's Response to May 19, 2009 Order, Docket No. 82. Although the court has reviewed the Affidavit of John Glynn, Docket No. 81, which challenges the propriety of utilizing RBRVS-based reimbursement rates, and, even assuming that considering this evidence external to the administrative record is proper, it does not find any basis for concluding that Blue Shield's use of the RBRVS in its calculation of the Allowable Amounts is an abuse of discretion.

**2. Hospital Stay**

The court gives deference to Blue Shield's determinations under plan and finds that most of the payments are adequately explained and not adversely affected by Blue Shield's dual role in

ORDER RE: RENEWED MOTIONS FOR SUMMARY JUDGMENT—No. C-05-03790 RMW
MAG                                                                                     5

evaluating and paying claims. Unfortunately, the coverage for out-of-plan providers leaves participants with significant personal obligations. In Fisher's case, this is particularly true with respect to her hospital stay. Blue Shield was billed $32,650 for Fisher's hospital stay at the Recovery Inn of Menlo Park for her surgery on January 15 and $32,650 for her follow-up surgery on January 22, 2002. The benefits paid were only $249.20 for the initial surgery and $420 for the follow-up. However, these payments were consistent with the policy provisions. The plan contains the following limitations with respect to hospital care:

> a. For covered Services not available in a Preferred Hospital, subject to Blue Shield's Pre-admission Review and other applicable requirements, benefits are paid at 90% of Billed Charges. Subscribers are responsible for the remaining 10% of Billed Charges.
>
> b. *For other non-Emergency Inpatient and Outpatient Services, benefits are paid at 70% of allowed charges of no more than $600 per Person per day.* Subscribers are responsible for the remaining 30% of the $600, as well as all charges in excess of $600.

BSC 421 (emphasis added); *see* BSC 388, 420-22, and 423. The reduction from $420 to $249.20 for the January 15 stay reflects the deductible/co-pay obligation.

### 3. Services Not Medically Necessary

Blue Shield declined payment for some claims for services for Fisher because it deemed them not medically necessary. These denials require scrutiny because such determinations are not made based upon an objective, standardized payment schedule and thus are more subjective and potentially influenced by Blue Shield's dual functions as evaluator and payor. An administrator is deemed to have abused its discretion if it renders its decisions without any explanation. *See Boyd, 410 F.3d at* 1178; *Johnson v. Trustees of the Western Conf. of Teamsters Pension Trust Fund*, 879 F.2d 651, 654 (9th Cir.1989).

#### a. Unnecessary Second Surgery

Blue Shield asserts that based upon the opinions of two reviewing physicians Fisher's second laporoscopy performed on January 22, 2002 was not medically necessary. Blue Shield, however, paid the allowable amounts for claims submitted with respect to that surgery. Blue Shield does not seek credit or reimbursement for its allegedly erroneous payment.

1  In support of its decision that the January 22, 2002 laroscopy was not medically necessary,
2  Blue Shield points to physicians' reviews supporting the conclusion that it was not medically
3  necessary. BSC 0003-0008. The notes of this finding are cryptic, although the clinical rationale
4  given on May 23, 2003 concludes that there is "[n]o documented need to repeat laporoscopy 1 wk
5  after primary procedure. The MD note of 21st Jan 02 states that patient 'is stable' and the patient
6  chooses ('elected to return for a second laporoscopy.'[)] This is not standard of care and may pose
7  significant risks." BSC 0004. Considering that Blue Shield obtained two opinions that the second
8  laporoscopy was not medically necessary and the second opinion provides an explanation of why the
9  second surgery was not medically necessary, Blue Shield's conclusion seems to have reasonable
10 support. However, this finding is irrelevant since Blue Shield paid the allowed amounts for the
11 claims pertaining to this surgery and is not seeking reimbursement.

### b. Hernia Repair

13 Blue Shield also paid nothing for the following procedures because it determined that a
14 hernia repair was not medically described: 49659-51 laparo procedure, hernia repair (billed by
15 primary surgeon); 49650-51-80 laparo hernia repair initial (billed by assistant surgeon); 49659-80-
16 51 laparo procedure, hernia repair (billed by assistant surgeon). Blue Shield also asserts that it
17 erroneously paid $161.45 for procedure code 49650-51 laparo hernia repair initial for the same
18 reason. The court finds that the determination that the need for hernia repair was not medically
19 documented is adequately supported by the record. *See* BSC 8 (providing detailed reasons why
20 there was inadequate preoperative indication of herniae and inadequate description in operative
21 notes to support hernia repair).

### c. Pudendal Nerve Block and Hysteroscopy

23 The administrative record shows that Blue Shield paid nothing for the procedure codes
24 relating to pudendal nerve block, 64430-59-50 (billed by primary surgeon) and 64430-59-80 (billed
25 by assistant surgeon), claiming they were not medically necessary. BSC 52-53. Blue Shield claims
26 that Fisher was under general anesthesia during the procedure, which made a separate nerve block
27 unnecessary. However, the only support Blue Shield shows is a physician review dated April 3,
28 2002 which states simply "I question the medical necessity for pudendal nerve block c general

United States District Court
For the Northern District of California

anesthesia. An assistant is certainly not necessary for pudendal nerve block or hysteroscopy." BSC 673. Other than this statement, there is no support that a nerve block is unnecessary when a patient is otherwise under general anesthesia. This statement does not provide any reason why the reviewing physician believes that the pudendal nerve block is unnecessary or why an assistant is unnecessary for the pudendal nerve block procedure. This statement also appears to have been Blue Shield's justification for denying payment for the procedure code billed by the assistant surgeon for the hysteroscopy procedure, Code 58558-59-80. As with the pudendal nerve block, the statement provides no explanation as to why an assistant is not necessary for a hysteroscopy. Thus, the court finds that Blue Shield is considered to have abused its discretion in denying coverage for the nerve block by both the primary and assistant surgeon as well in denying coverage for the hysteroscopy procedure rendered by the assistant surgeon.

### d. Procedures Performed by the Assistant Surgeon

Blue Shield explains that "[w]hen an assistant surgeon is utilized during a procedure, Blue Shield follows the RBRVS, which calculates the assistant surgeon's Allowable Amount as a percentage of the primary surgeon's Allowable Amount." *See* BSC 670, n.15. Blue Shield goes on to state "Additionally, many procedures, according to RBRVS, do not require the services of an assistant surgeon. Thus, when assistant surgeons bill for procedures which do not require the use of an assistant surgeon in RBRVS, no payment is allowed." *Id.*

The court previously expressed concern that it had no way to evaluate whether the RBRVS indeed informed whether a particular procedure code required the services of an assistant surgeon. Pursuant to the court's request for supplemental briefing, Blue Shield has provided additional information to assist the court in understanding how Blue Shield determined whether an assistant surgeon was required for the procedures for which it was billed. This supplemental documentation shows that the RBRVS does not indicate determine the appropriateness of the use of an assistant surgeon for any particular procedure.

It appears that the payment for procedure codes billed by the assistant surgeon were denied because they were (1) determined to be encompassed by Code 58662 (incorrectly with respect to enterolysis code 44200-59-80 and hysteroscopy code 50775-80-99 as discussed below); (2)

ORDER RE: RENEWED MOTIONS FOR SUMMARY JUDGMENT—No. C-05-03790 RMW
MAG                                         8

1  determined to be not medically necessary because the primary procedure was not medically
2  necessary (correctly with regard to hernia repair codes 49650-51-81 and 49659-80-51; incorrectly
3  with regard to pudendal nerve block 64430-59-80); or (3) procedures for which an assistant surgeon
4  was determined by medical review not to be necessary (incorrectly with respect to hysteroscopy
5  code 58558-59-80 and pudendal nerve block 64430-59-80).  Although Blue Shield asserts that "for
6  those assistant surgeon claims that were not paid by Blue Shield, each determination was made
7  based on an independent physician's review of the claim" (*see* Blue Shield's Supp. Resp. at 9),
8  nothing is provided to support the determination except the statement itself.

### 4. Encompassed Procedures

Blue Shield paid nothing for the following procedures rendered during the first surgery claiming that they were encompassed by one of the primary procedures, namely the laparoscopic procedure to excise lesions (Procedure Code 58662): 44200-59 laparoscopy, enterolysis (billed by primary surgeon);  44200-59-80 laparoscopy, enterolysis (billed by assistant surgeon); 50715-511-52 release of ureter (billed by primary surgeon); 50715-80-89 release of ureter (billed by assistant surgeon).  Blue Shield cites a Physician Review at BSC 52-53 for support for these determinations. The only support found on these pages is a footnote on Blue Shield forms that reads "THIS PAYMENT HAS BEEN REDUCED BECAUSE MULTIPLE RELATED SERVICES WERE PROVIDED ON THE SAME DAY."  BSC 53.  This does not support Blue Shield's determination that there was a sufficient overlap to justify not paying any amount on them.  Therefore, the court determines that, based on the administrative record, Blue Shield is deemed to have abused its discretion by not paying anything for these procedures because it has failed to explain its why these services were duplicative of that covered by payment for the laparoscopic procedure to excise lesions.

### C. Summary of Claims and Required Payment

The following table summarizes the court's ruling by procedure code:

| Date | Procedure Code | Description | Explanation | Payment Required |
|---|---|---|---|---|
| 1/15/02 | 00360 | Hospitalization and supplies (stay at Recovery Inn) | Plan limits non-preferred hospitalizations to $600/day; deductible/co-pay applied | $249.20 |
| 1/15/02 | 00840-P2 | Anesthesia for laparoscopic surgery by primary surgeon (Metzger) | RBRVS | $505.27 |
| 1/15/02 | 44200-59 | Laparoscopy, enterolysis by primary surgeon (Metzger) | Procedure not shown to be encompassed by procedure 58662 (BSC 52-53) | Amount to be calculated based upon this order; remand for payment |
| 1/15/02 | 49650-51 | Laparo hernia repair initial by primary surgeon (Metzger) | Procedure was not medically necessary, so Allowable Amount should have been $0 (BSC 52-53).  Paid in error to Fisher's benefit. | $161.45 |
| 1/15/02 | 49659-51 | Laparo procedure, hernia repair by primary surgeon (Metzger) | Procedure was not medically necessary (BSC 52-53; BSC 3-8) | $0 |
| 1/15/02 | 50715-51-52 | Release of ureter by primary surgeon (Metzger) | Procedure not shown to be encompassed by procedure 58662 (BSC 52-53) | Amount to be calculated based upon this order; remand for payment |
| 1/15/02 | 58558-59 | Hysteroscopy by primary surgeon (Metzger) | RBRVS | $108.27 |
| 1/15/02 | 58662 | Laparoscopy, excise lesions by primary surgeon (Metzger) | RBRVS + 20% increase based on consultation with physician advisor | $664.45 |
| 1/15/02 | 64430-59-50 | Nerve block injection, pudendal by primary surgeon (Metzger) | Procedure medically necessary. | $30.74 |
| 1/15/02 | 44200-59-80 | Laparoscopy, enterolysis by assistant surgeon (Cook) | Procedure not shown to be encompassed by procedure 58662 (BSC 52-53) | Amount to be calculated based upon this order; remand for payment |
| 1/15/02 | 49650-51-80 | Laparo hernia repair initial by assistant surgeon (Cook) | Procedure was not medically necessary (BSC 52-53; BSC 3-8) | $0 |

| Date | Procedure Code | Description | Explanation | Payment Required |
|---|---|---|---|---|
| 1/15/02 | 49659-80-51 | Laparo procedure, hernia repair by assistant surgeon (Cook) | Procedure was not medically necessary (BSC 52-53; BSC 3-8) | $0 |
| 1/15/02 | 50775-80-99 | Release of ureter by assistant surgeon (Cook) | Procedure not shown to be encompassed by procedure 58662 (BSC 52-53) | Amount to be calculated based upon this order; remand for payment |
| 1/15/02 | 58558-59-80 | Hysteroscopy by assistant surgeon (Cook) | Procedure medically necessary (BSC 52-53; BSC 3-8) | Amount to be calculated based upon this order; remand for payment |
| 1/15/02 | 58662-80 | Laparoscopy, excise lesions by assistant surgeon (Cook) | RBRVS | $132.89 |
| 1/15/02 | 64430-59-80 | Nerve block injection, pudendal by assistant surgeon (Cook) | Procedure was medically necessary | Amount to be calculated based upon this order; remand for payment |
| 1/22/02 | 00360 | Hospitalization and supplies for followup surgery (stay at Recovery Inn) | Plan limits non-preferred hospitalizations to $600/day | $420 |
| 1/22/02 | 00840-P2 | Anesthesia for followup laparoscopic surgery | Not medically necessary but paid per RBRVS. Paid to Fisher's benefit. | $505.27 |
| 1/22/02 | 44200-79 | Laparoscopy, enterolysis by primary surgeon | Not medically necessary but paid per RBRVS. Paid to Fisher's benefit. | $700.84 |

### D. Attorneys' Fees

The court does not find that an award of fees is justified and denies plaintiff's request for attorney's fees. In determining whether to award fees the court considers: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th

Cir.1980) In this case, the main reasons the court denies fees are that neither party's conduct was culpable or in bad faith and in large part Blue Shield's positions were meritorious.

### III.  ORDER

For the foregoing reasons, the court remands the case to the Administrator for payment as ordered. The court retains jurisdiction if the parties do not agree as to the amounts due under this order.

DATED:     10/5/2008

*Ronald M. Whyte*

RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Laurence F. Padway          lpadway@padway.com

**Counsel for Defendant:**

Ned A. Fine                 nfine@employerlawyers.com
John Michael LeBlanc        jleblanc@barwol.com
Justin Jonathan Lowe        jlowe@barwol.com
Andrew Stephen Williams     awilliams@barwol.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   10/6/2008                              TSF
                                           **Chambers of Judge Whyte**

United States District Court
For the Northern District of California